Nabatanzi v. NH Dept. of Corrections  CV-99-180-M   08/25/00
UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Elizabeth M. Nabatanzi,
     Plaintiff

     v.                                    Civil No. 99-180-M
                                           Opinion No. 2000 DNH 165
New Hampshire Department of Corrections,
Hillsborough County House of Corrections,
New Hampshire State Prison for Women,
Henry Risley, Jane Coplan, Daurice Ducharme,
Gregory Wheeden, and Robert Stanley,
     Defendants


**O R D E R**


     Pro se plaintiff, Elizabeth Nabatanzi, brings this action

against various state and municipal entities, as well as their

employees, seeking compensatory and punitive damages for alleged

violations of her federally protected rights.  Although it is

unclear from the record precisely who has been served as a

defendant in this proceeding, it appears that all defendants of

record have moved for summary judgment.[1]  Plaintiff objects.

---

[1]     Plaintiff's dispositive and responsive papers make
reference to a number of people whose names do not appear in

## Standard of Review

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the

---

either her complaint (document no. 1), her amended complaint (document no. 7), or her supplemental amended complaint (document no. 36). Moreover, it is difficult to discern from the record precisely which of the defendants who are named in the various iterations of plaintiff's complaint have actually been served. The names appearing in the case caption are those defendants who appear to be proper parties to this litigation.

2

moving party carries its burden, the burden shifts to the nonmoving party to demonstrate, with regard to each issue on which it has the burden of proof, that a trier of fact could reasonably find in its favor. See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

## Background

Viewing the record in the light most favorable to plaintiff, and liberally interpreting the allegations in her pro se complaint, the material facts in this proceeding are, as best as the court can determine, as follows. Following what appears to have been a state court conviction for larceny, plaintiff was incarcerated at the Massachusetts State Prison at Framingham ("FSP"). On April 9, 1998, she slipped on snow-covered stairs at FSP and injured her shoulder. She was treated at the prison infirmary, where she received x-rays that revealed she had no broken bones. Plaintiff was given Tylenol or aspirin for pain and a sling to help immobilize her arm.

When she was released from the custody of Massachusetts corrections officials, the United States Immigration and Naturalization Service ("INS") began deportation proceedings against her. Plaintiff was taken into INS custody and transferred to the Hillsborough County House of Correction ("Valley Street"). Approximately three months after her arrival at Valley Street, plaintiff was released on her own recognizance. Following her release, however, plaintiff did not receive any medical treatment for her shoulder, other than Tylenol. Notwithstanding her claim that Valley Street officials should have performed an MRI on her shoulder while she was in their custody, she did not obtain such testing once she was released, nor did she have her injured shoulder surgically repaired. During that time, she worked as a full-time charge nurse (when sufficient work was available) and concedes that her shoulder injury did not preclude her from performing any of the tasks associated with that position.

4

It appears that in early 1999, plaintiff was ordered deported to her native country of Uganda. Pending appeal, bail was set at $1500. In March of 1999, when plaintiff was unable to post the required surety, the INS again took her into custody. Initially, she was held at the Goffstown Women's Prison, which is part of the New Hampshire State Prison System. There, she claims to have been classified as a "C" inmate but, due to what she describes as racial discrimination, was required to live on the more restrictive "D" tier for longer than she believes was appropriate. Plaintiff remained at Goffstown for approximately two months. On May 4, 1999, she was transferred back to Valley Street, where she remained until September of 1999, when she was released on bail. Notwithstanding her claims that her shoulder injury constituted a serious medical condition that caused her substantial discomfort, as was the case following her first release from custody, plaintiff did not undergo any medical treatment for her shoulder after her most recent release from Valley Street.

5

In her amended complaint, plaintiff alleges that various defendants were deliberately indifferent to her serious medical needs, both while she was held at Goffstown and at Valley Street. Among other things, she claims that she was denied proper and adequate clothing to protect her from the cold, denied access to medical treatment that defendants knew (or should have known) she desperately needed, and denied access to prescribed pain, anti-nausea, and anti-diarrhea medications.

She also claims that various defendants discriminated against her on the basis of her race. As a result, she claims to have been forced to remain in Goffstown in a more restrictive classification (i.e., "D" tier) well beyond any appropriate frame, denied access to privileges to which she was otherwise entitled, and forced to live in portions of both Goffstown and Valley Street that were inhabited by violent and dangerous inmates. Finally, although her amended complaint is fairly confusing, plaintiff appears to raise claims sounding in common law defamation and invasion of privacy. She also raises a claim

6

that is somehow related to her assertion that her inmate identification card at Goffstown bore an incorrect social security number and that her "prisoner's right to a proper identity was violated."  Amended complaint at 9 (document no. 7).

## Discussion

I.  <u>Claims Against the State and State Actors</u>.

Plaintiff's claims against the New Hampshire Department of Corrections, the New Hampshire State Prison for Women at Goffstown, and defendants Risley, Coplan, Ducharme, Stanley, and Wheeden (collectively, the "Goffstown Defendants") all relate to incidents she claims occurred while she was held at Goffstown, from March 2, 1999 through May 4, 1999.  Defendant Henry Risely was, at all times material to this proceeding, Commissioner of the New Hampshire Department of Corrections.  Defendant Jane Coplan has been employed by the New Hampshire Department of Corrections for approximately 20 years and, for the past five years, she has been the Superintendent of Goffstown.  <u>See</u> Affidavit of Jane Coplan, Exhibit F to defendants' memorandum.

7

Defendant Daurice Ducharme has been employed at Goffstown for approximately 10 years as a social worker.  See Affidavit of Daurice Ducharme, Exhibit D to defendants' memorandum.  Defendant Gregory Wheeden is employed by the New Hampshire Department of Corrections as the shop manager at Goffstown.  See Affidavit of Gregory Wheeden, Exhibit E to defendants' memorandum.  Defendant Robert Stanley has been employed at Goffstown for approximately 8 years.  For the past six years, he has acted as a case manager and classification officer.  See Affidavit of Robert Stanley, Exhibit C to defendants' memorandum.

A.    The New Hampshire Department of Corrections, The State Prison for Women at Goffstown, and Official Capacity Defendants.

The New Hampshire Department of Corrections and the New Hampshire State Prison for Women at Goffstown correctly assert that they are agencies of the State of New Hampshire and, therefore, are not subject to liability under § 1983.  See generally Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

With regard to plaintiff's "official capacity" claims, it is impossible to determine precisely which defendants she has sued in their official capacities. Defendants suggest that she has sued only Henry Risley (the Commissioner) and Jane Coplan (Goffstown's Superintendent) in their official capacities. See Defendants' memorandum in support of summary judgment (document no. 69) at 9.

Plaintiff's claims against various state actors in their official capacities are, in effect, claims against the State. See Negron Gaztambide v. Hernandez Torres, 145 F.3d 410, 416 (1st Cir. 1998) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. . . [A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (quoting Kentucky v. Graham, 473 U.S. 159, 165 (1985) cert. denied, 525 U.S. 1149 (1999)). Plaintiff cannot bring a § 1983 claim for monetary relief against the New Hampshire Department of Corrections, the Goffstown Prison, or any of the

9

employees of Goffstown in their official capacities because they are shielded by the State's Eleventh Amendment immunity.

Consequently, the New Hampshire Department of Corrections, its Commissioner (named in his official capacity), the New Hampshire State Prison for Women at Goffstown, and all employees and administrators of Goffstown named in their official capacities are entitled to judgment as a matter of law.

B.    Goffstown Employees in their Individual Capacities.

1.    Inadequate Medical Care.

While plaintiff was housed at Goffstown, she was a detainee of the INS.  Accordingly, the constitutional obligations owed to her by the various defendants flow from the provisions of the Fourteenth, rather than the Eighth Amendment.  Nevertheless, the protections available to detainees under the Fourteenth Amendment "are at least as great as the Eighth Amendment protections available to a convicted prisoner."  City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983) (citing

10

Bell v. Wolfish, 441 U.S. 520, 535 (1979)). Thus, at a minimum, defendants had a constitutional duty not to be "deliberately indifferent" to Nabatanzi's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). See also Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991) (holding that the Constitution also protects against deliberate indifference to an inmate's serious mental health needs).

In order to prove a § 1983 claim for medical mistreatment, an inmate or detainee must show that prison officials demonstrated "deliberate indifference to [her] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). This test has both subjective (state-of-mind) and objective components. See DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir. 1991). In a 1994 opinion, Justice Souter explained the state-of-mind element of deliberate indifference in the context of an Eighth Amendment claim. See Farmer v. Brennan, 511 U.S. 825, 834-847 (1994). A prison official is liable "only if he knows that inmates face a

11

substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id., at 847.

Accordingly, an Eighth Amendment medical mistreatment claim cannot be premised upon a theory of simple negligence or medical malpractice; a physician's conduct must go beyond negligence in diagnosing or treating a prisoner's medical condition. Similarly, an Eighth Amendment violation does not occur merely because a prisoner happens to disagree with a physician's decision regarding the proper course of medical treatment. See Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) ("The courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment, or to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.").

With regard to the objective component of the deliberate indifference test, the prisoner must show that he or she has

suffered a serious deprivation of a fundamental right or basic human need.  See DesRosiers, 949 F.2d at 18.  As the Supreme Court has observed, the Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citation and internal quotation marks omitted).  See also Rhodes v. Chapman, 452 U.S. 337, 347 (1981) ("Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment. . . . But, conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.").

In support of her claim that she was denied appropriate medical care while detained at Goffstown, Nabatanzi alleges that

13

her medical examinations were deliberately delayed, x-rays of her injured shoulder were never taken, she was denied appropriate (i.e., stronger, possibly narcotic) medications, and she was "deliberately and maliciously" forced to participate in physical therapy.  See Amended complaint (document no. 7) at 3.

Plaintiff has, however, failed to allege facts which might even arguably suggest that defendants' conduct amounted to anything more than, at the very worst, negligence.  See, e.g., Amended complaint at 3-4 ("My right hand and shoulder is now limited in range of motion due to the negligence, malpractice and given [sic] work assignments that were medically inappropriate, very unsafe - beyond my physical capabilities.") (emphasis supplied).  Moreover, she has failed to allege that the Goffstown defendants actually knew that she faced "a substantial risk of serious harm" and, nevertheless, "disregard[ed] that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. at 847.

14

During her two month stay at Goffstown, plaintiff was seen by members of the prison medical staff approximately 10 times and received various forms of medical treatment.  <u>See</u> Affidavit of Dr. John Hill, Exhibit B to defendants' memorandum.  Nothing in the record suggests that plaintiff received care that might even arguably have fallen below the standard established by the Constitution.  At the very most, plaintiff's allegations (if taken at face value and credited as true) might support a claim that she received negligent medical care.  Such a claim is, however, not viable under § 1983.

Even the expert report plaintiff submitted in opposition to defendants' motion for summary judgment makes clear that, at best, her claim is one for medical malpractice.  In the summary of his findings and medical conclusions, Dr. Richard Fraser told plaintiff:

> In reviewing the various memoranda from March 2, 1999 to May 4th 1999 you were seen multiple times by the prison health care providers and there is clearly a demonstrable care plan.  Trials of Tylenol, Motrin and Naprosyn along with physical therapy and rest are

15

appropriate treatments.  One medication was not
controlling your pain and another was prescribed.  A
two week trial of one medication and rest seems
appropriate as well.  An MRI was ordered in an
appropriate fashion after a trial of various
medications.  Sick call hours were on a regular basis
and my understanding is that there was a protocol for
emergencies.

* * *

Overall I see the care that you received by the
physician and nurse practitioner as being appropriate.
You were clearly dissatisfied with the care provided
and there were certainly communication problems.  In my
opinion it is wrong that you did not receive a short
course of stronger pain medication but this does not
necessarily mean negligence or malpractice.

Exhibit F to plaintiff's opposition memorandum (document no. 71),

Medical Report of Dr. Richard Fraser.

Even charitably construing plaintiff's pleadings, the court

cannot conclude that she has demonstrated that she suffered from

"serious medical needs," or, even assuming she suffered from a

serious medical need, that the Goffstown Defendants were in any

way "deliberately indifferent" to it.  See, e.g., Exhibit F to

plaintiff's memorandum, Expert medical report of Dr. Fraser.  In

16

short, the record shows that the Goffstown Defendants did not deny Nabatanzi any of the "minimal civilized measure[s] of life's necessities," Wilson v. Seiter, 501 U.S. at 298, nor did their conduct amount to an "unnecessary and wanton infliction of pain" or qualify as "repugnant to the conscience of mankind." Estelle v. Gamble, 429 U.S. at 105-106. Accordingly, the Goffstown defendants are entitled to judgment as a matter of law as to plaintiff's medical claims.

2.  Discriminatory Housing Claim.

Plaintiff also alleges that her constitutional rights were violated when the Goffstown Defendants intentionally discriminated against her on the basis of her race by holding her in the more restrictive "D tier" longer than was appropriate. Although not clear from her complaint, plaintiff's recent filings also suggest that she claims to have been transferred from Goffstown to Valley Street as part of a conspiracy among a number of the Goffstown defendants, aimed at retaliating against her because of her race. Evaluating her discrimination claim under the burden-shifting analysis discussed in McDonnell Douglas Corp.

17

v. Green, 411 U.S. 792 (1973), the court concludes that plaintiff's racial discrimination claim cannot survive the Goffstown Defendants' motion for summary judgment.

Even assuming plaintiff has set forth the elements of a viable prima facie claim for racial discrimination, the Goffstown Defendants have responded by articulating a legitimate and non-discriminatory reason for detaining plaintiff in the more restrictive confines of D-tier. In his affidavit, defendant Robert Stanley testified that upon her admission to Goffstown, plaintiff was classified as a C-3 (medium security) inmate and was slated to be housed in B-tier. See Affidavit of Robert Stanley, Exhibit C to defendants' memorandum. However, because of a shortage of bed space, plaintiff was initially housed on the more restrictive D-tier, which is normally used to house C-4 inmates. Stanley also testified that the prison's normal practice is to move C-3 inmates from D-tier to the less restrictive B-tier as space becomes available, in the order in which they entered the prison, provided they are not experiencing

18

any behavioral or disciplinary problems. Stanley said he decided to keep plaintiff on D-tier because she was experiencing "behavioral difficulties." Specifically, she was having difficulty getting along with other inmates, her roommates did not want to live with her, and she was not attending any work program. Stanley explicitly denied that the decision to hold plaintiff on D-tier was in any way racially motivated.

In response, plaintiff has failed to point to any evidence suggesting that defendants' proffered explanation is either false or might be a pretext for racial discrimination. Plaintiff appears to believe that the most compelling piece of evidence in support of her racial discrimination claim (which she also describes as a conspiracy) is the "Inmate Final Clearance Certificate," dated May 4, 1999, on which plaintiff claims her signature was forged. Even assuming plaintiff did not actually sign that form, it is difficult to see how that fact would advance her claim that her transfer was improperly motivated by issues of race. The form merely represents a final checklist, on

19

which responsible prison authorities place their initials as various tasks (such as dispensing the contents of the inmate's prison account, placing a notice of forwarding address in the prison mail room, making certain that the inmate returns all prison property, etc.) are completed. That plaintiff might not have signed that form (and that someone might have "forged" her signature) does not even remotely suggest that plaintiff's transfer, which was initiated well before the May 4, 1999 "forgery", was improperly motivated.

In the absence of any evidence from which one might reasonably infer that plaintiff's treatment while housed at Goffstown or her transfer from Goffstown to Valley Street was unlawfully motivated by her race, the Goffstown Defendants are entitled to judgment as a matter of law as to plaintiff's racial discrimination claims.

3.   Remaining Claims against the Goffstown Defendants.

As to the remainder of plaintiff's complaints, it is difficult to tell whether she believes that they are actionable under § 1983 or whether she is pursuing state law claims over which she believes the court should exercise supplemental jurisdiction (e.g., claims of defamation, invasion of privacy, failing to provide her with appropriate work while in custody, and maintaining inaccurate prison records by providing her with an inmate identification card that bore an incorrect social security number).  To the extent she is pursuing those claims under § 1983, she has failed to demonstrate that any of the injuries she claims to have sustained give rise to a cognizable claim under § 1983.  To the extent she is pursuing state law claims against the Goffstown Defendants, the court declines to exercise its supplemental jurisdiction.  See 28 U.S.C. § 1367(c).  See also Camelio v. American Federation, 137 F.3d 666, 672 (1st Cir. 1998).

In this case, several factors counsel against the exercise

21

of supplemental jurisdiction over plaintiff's state law claims against the Goffstown defendants. First and perhaps most notably, her foundational federal claims against those defendants have been dismissed. Additionally, plaintiff's state claims against the Goffstown Defendants do not arise out of the same common nucleus of operative facts as her claims against the remaining defendants. Rather, her state law claims against the Goffstown Defendants relate exclusively to her treatment while housed at Goffstown, while her claims against the remaining defendants relate to her subsequent detention at the Valley Street facility.

In light of the foregoing, the court, in the exercise of its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law claims against the Goffstown Defendants.

II. Claims Against The Hillsborough County House of Corrections and its Employees.

Following her transfer from Goffstown, plaintiff was housed at Valley Street for approximately four and one-half months (May

22

4 through September 21, 1999, when she was released on bail).
While there, plaintiff alleges that the Valley Street
correctional facility and various individuals employed there
(collectively, the "Valley Street Defendants") violated her
constitutionally protected rights by exposing her to unsanitary
conditions, treating her differently than white inmates,
providing her with disproportionate access to property and
employment opportunities, and by acting with deliberate
indifference to her serious medical needs.

A. Failure to Conduct an MRI.

Shortly before her release from Valley Street in September
of 1999, plaintiff was taken to Elliot Hospital to undergo an MRI
on her shoulder. However, because she had not previously been
provided with an anti-anxiety medication, the test was not
performed. Plaintiff claims it was rescheduled for the following
day and says that the Valley Street Defendants' failure to take
her to the rescheduled test prior to her release on September 21,

23

1999, constitutes deliberate indifference to her serious medical needs. The court disagrees.

Like her claims against Goffstown, plaintiff's claim relating to her failure to receive an MRI while housed at Valley Street fails to state a viable cause of action. Plainly, defendants made an effort to obtain an MRI of plaintiff's shoulder. That the test was not performed when originally scheduled or that the test was not subsequently administered prior to plaintiff's release a few days later does not amount to a constitutional violation. Again, plaintiff's claim with regard to the MRI testing is, at best, one for negligence and as such is not actionable under § 1983.

B.   Plaintiff's Remaining § 1983 Claims.

Unlike her claim(s) relating to the MRI, plaintiff's remaining claims against Valley Street and its employees are more substantial. She alleges that she was repeatedly denied timely and effective treatment for severe and bloody diarrhea,

24

notwithstanding several requests for help.  In response, defendants have simply denied that they were deliberately indifferent to plaintiff's serious medical needs.  Alternatively, they claim that they are entitled to qualified immunity.  They have not, however, submitted plaintiff's medical records from Valley Street, nor have they provided affidavits or deposition testimony of any of the medical staff from Valley Street relating to the care provided to plaintiff.

In response to plaintiff's claim that she was subjected to racial discrimination, the Valley Street Defendants represented that they would provide the court with supplemental affidavits and/or deposition testimony supporting their assertion that no such discrimination took place.  See Defendants' memorandum (document no. 58) at 4.  They have, however, failed to submit any such supplemental documentation.

Consequently, on the current record, the court cannot conclude that Valley Street or its employees are entitled to

25

judgment as a matter of law as to plaintiff's claims that she was subjected to unlawful discrimination and deprived of constitutionally adequate medical care. The Valley Street Defendants' motion for summary judgment is, therefore, denied as to those claims, but without prejudice to filing a properly supported and adequately briefed dispositive motion.

## Conclusion

For the foregoing reasons, the Goffstown Defendants' motion for summary judgment (document no. 59) is granted as to all of plaintiff's federal claims against those defendants. As to her state law claims against the Goffstown Defendants, the court declines to exercise its supplemental jurisdiction and they are dismissed without prejudice.

The Valley Street Defendants' motion for summary judgment (document no. 58) is granted in part and denied in part. As to plaintiff's claims relating to defendants' failure to provide her with an MRI in the days immediately preceding her release, the

26

Valley Street Defendants are entitled to judgment as a matter of law.  In all other respects however, their motion for summary judgment is denied.

Plaintiff's motions for summary judgment (documents no. 19 and 46) are denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 25, 2000

cc:  Elizabeth M. Nabatanzi
     Andrew B. Livernois, Esq.
     John A. Curran, Esq.

27