Nabatanzi v. NH Dept. of Corrections  CV-99-180-M    10/17/00

UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Elizabeth M. Nabatanzi,
      Plaintiff


      v.                                  Civil No. 99-180-M
                                          Opinion No. 2000 DNH 215

New Hampshire Department of Corrections,
Hillsborough County House of Corrections,
New Hampshire State Prison for Women,
Henry Risley, Jane Coplan, Daurice Ducharme,
Gregory Wheeden, and Robert Stanley,
      Defendants

                           **O R D E R**


      Pro se plaintiff, Elizabeth Nabatanzi, filed this action

against various state and municipal entities and their employees,

seeking compensatory and punitive damages of One Million Dollars

for alleged violations of her constitutionally protected rights.

By prior order, the court granted the state defendants' motion

for summary judgment.  See Nabatanzi v. N.H. Dept. of

Corrections, No. 99-180-M (D.N.H. August 25, 2000).


      What remains of plaintiff's original complaint are two

federal claims for relief.  In the first, plaintiff seeks damages

for what she says was defendants' deliberate indifference to her serious medical needs. In the second, she seeks compensation for alleged racially discriminatory conduct on the part of a correctional officer employed at the Hillsborough County House of Corrections (also known as "Valley Street"). Both claims relate to plaintiff's detention at Valley Street from May through September of 1999.

As noted in the court's prior order, it is unclear which of the many proposed defendants identified in the various iterations of plaintiff's complaint have been properly served. For purposes of this order, the court has assumed that Superintendent James O'Mara and former Correctional Officer Robin Townsend, both of whom are identified in plaintiff's papers as people who allegedly violated her rights, are properly before the court as defendants.

## Standard of Review

When ruling upon a party's motion for summary judgment, the court must "view the entire record in the light most hospitable

2

to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Intern'l Ass'n of Machinists and Aerospace Workers v. Winship Green Nursing Center, 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

## Background

The factual background to this case was set forth in detail in the court's prior order and need not be recounted. It is sufficient to note that plaintiff claims that, while detained at Valley Street, she was repeatedly denied timely and effective medical treatment for severe and bloody diarrhea, notwithstanding several requests for help. Although her original complaint focuses almost exclusively on claims against the State and

3

relating to her detention at the Goffstown Prison for Women (all of which were dismissed by prior order), plaintiff sets forth the nature and bases of her claims against the Valley Street Defendants in her Amended Complaint (document no. 7) and Supplemental Amended Complaint (document no. 36).

> Ever since I arrived at this jail on 5/4/99, I had never received a Physical Exam like everyone else. I had never seen a Doctor. This [i.e., Correctional Officer Robin Townsend] is a Correctional Officer not a nurse or Nurse Practitioner. I had a cold shoulder and I am anemic. I asked for a sweatshirt at night due to the very cold cells. She refused me any yet all her Caucasian inmate friends received one without medical advice. She disrespected me one day and ordered [me] to take off the one I was wearing at once.
>
> The jail took away my iron pills I came with from Goffstown and never replaced them up to now. I [did] not get them. I suffered dizziness, weakness, diarrhea now over 45 days, they have failed to give me necessary medications. I have never received appropriate tests for what caused my diarrheas. . . . All I got was 30cc of Keopectate which did not work. Failed to give me necessary medications, failed to perform appropriate tests. No MRI, no stool tests, delayed examinations and any kind of treatments, gave them stool specimens, no medications, no tests done, no results, deliberate indifference.

Amended Complaint (document no. 7) at 10-11. See also Supplemental Amended Complaint (document no. 36) at 1-2

4

(discussing plaintiff's claim that she was subjected to an unsanitary cell, believed she was exposed to lice, and claims not to have immediately been screened for lice).

**Discussion**

I.   <u>Deliberate Indifference to Serious Medical Needs</u>.

   A.   <u>Legal Standard</u>.

   As the court noted in its prior order, in order to prove a § 1983 claim for medical mistreatment, an inmate or detainee must show that prison officials demonstrated "deliberate indifference to [her] serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  This test has both subjective (state-of-mind) and objective components.  <u>See</u> <u>DesRosiers v. Moran</u>, 949 F.2d 15, 18 (1st Cir. 1991).  In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), Justice Souter explained the state-of-mind element of deliberate indifference in the context of an Eighth Amendment claim.  <u>See</u> <u>Id.</u>, at 834-847.  A prison official is liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  <u>Id.</u>, at 847.

5

Accordingly, an Eighth Amendment medical mistreatment claim cannot be premised upon a theory of simple negligence or medical malpractice; a physician's conduct must go beyond negligence in diagnosing or treating a prisoner's medical condition. Similarly, an Eighth Amendment violation does not occur merely because a prisoner happens to disagree with a physician's decision regarding the proper course of medical treatment. See Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993) ("The courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment, or to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.").[1]

---

[1] While plaintiff was housed at Valley Street, she was a detainee of the INS. Accordingly, the constitutional obligations owed to her by defendants flow from the provisions of the Fourteenth, rather than the Eighth Amendment. Nevertheless, the protections available to detainees under the Fourteenth Amendment "are at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). Thus, at a minimum, defendants had a constitutional duty not to be "deliberately indifferent" to Nabatanzi's serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976).

With regard to the objective component of the deliberate indifference test, the prisoner must show that he or she has suffered a serious deprivation of a fundamental right or basic human need.  See DesRosiers, 949 F.2d at 18.  As the Supreme Court has observed, the Constitution "does not mandate comfortable prisons, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citation and internal quotation marks omitted).  See also Rhodes v. Chapman, 452 U.S. 337, 347 (1981) ("Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment. . . .  But, conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.").

B.    <u>Plaintiff's Medical Treatment</u>.

Plaintiff claims that defendants violated her constitutional rights by having been deliberately indifferent to her serious medical needs.  Specifically, she says she suffered from bloody diarrhea and, notwithstanding repeated complaints, received no appropriate treatment.

Plaintiff was admitted to Valley Street on May 4, 1999, at which time she underwent a medical intake screening and completed a medical questionnaire.  <u>See</u> Exhibit A to Defendants' Motion for Summary Judgment, Affidavit of Barbara Condon, R.N., at para. 4. At that time, she raised no complaints concerning diarrhea, nor did she reveal any history of diarrhea while she was detained at the Goffstown Prison for Women.  <u>Id.</u>  Within a few days, however, plaintiff complained of stomach upset, which she attributed to the Naprosyn that had been prescribed for her during her incarceration at Goffstown (to alleviate her shoulder pain).  <u>See</u> Plaintiff's medical records and inmate request slips (attached to Condon affidavit).  Plaintiff's medical chart and her reports of stomach upset were presented to a physician, who discontinued her

8

use of Naprosyn and prescribed the use of Tylenol to manage her shoulder pain.  See Condon Affidavit, at para. 6.  See also Plaintiff's medical records.

Neither plaintiff's inmate request slips nor her medical records contain any further references to stomach upset or diarrhea for approximately one month.  On June 9, 1999, however, plaintiff complained "of loose stools since 5/4/99" (i.e., the day on which she arrived at Valley Street).  Plaintiff's Dispensary Card, attached to Condon Affidavit.  Plaintiff was given Kaopectate and her medical chart was turned over to a nurse practitioner who recommended that a stool sample be tested for bacterial and/or parasitic infection.  A week later, on June 16, 1999, plaintiff again complained of diarrhea and was again given Kaopectate.  She also said that she was concerned that her condition might be caused by HIV infection.  Accordingly, she was given an HIV/AIDS test (followed by appropriate counseling), the results of which were negative.

From the middle of June until the beginning of September, the record contains no references to plaintiff having complained of stomach upset or diarrhea. None of the medical requests slips submitted by plaintiff during that time period make any reference to stomach upset or diarrhea. Instead, they focus on, for example, her desire for extra pillows (for her injured shoulder) and repeated requests for an additional sling for her arm.

The final reference in plaintiff's records to any intestinal ailments occurred immediately prior to her release from custody, when plaintiff was again seen by medical staff at Valley Street. See September 9, 1999, entry in plaintiff's dispensary card. At that time, plaintiff reported that she first began experiencing diarrhea while an inmate at Goffstown (notwithstanding her failure to mention that claim on her medical intake questionnaire) and suffered from the condition for more than 30 days. However, she reported that she was no longer experiencing any diarrhea.

Plaintiff also claims that she was denied constitutionally adequate care when her roommate was apparently diagnosed with, or at least examined for the presence of, lice ("Lice and bugs. I was not checked today yet my roommate was checked."). See Inmate Health Service Request Form, attached to Exhibit A of defendants' memorandum. However, the record reveals that on the very day she filed the inmate request form, medical staff at Valley Street honored her request, examined her scalp for lice, and reported that "no live vermin or eggs [were] observed." Inmate Health Service Request Form, attached to Exhibit A of defendants' memorandum.

The record fails to support any claim that plaintiff was denied constitutionally sufficient medical care with regard to the lice issue. And, assuming diarrhea is a serious medical condition (as it surely is under certain circumstances), the record fails to support plaintiff's claim that defendants were deliberately indifferent to that condition. To the contrary, the record reveals that when plaintiff complained of discomfort, she was seen by medical staff who took appropriate remedial action.

11

Kaopectate was prescribed (on at least two occasions). Stool samples were taken (again, on at least two occasion) to rule out some sort of underlying bacterial or parasitic infection. And, when she complained that she was concerned that her diarrhea might be the result of HIV infection, plaintiff was medically screened for HIV/AIDS and given appropriate counseling on the issue.

Even charitably construing what appear to be plaintiff's overstated claims, at the very most it might be argued that defendants were negligent in terms of the medical care that they provided to defendant. Nothing, however, supports plaintiff's assertion that they were deliberately indifferent to her serious medical needs. Consequently, the individual defendants (in their individual capacities) are entitled to judgment as a matter of law as to that claim.

And, because plaintiff has failed to point to evidence in the record sufficient to support her claim that she suffered any constitutional injury, Hillsborough County is necessarily also

12

entitled to judgment as a matter of law. Parenthetically, the court notes that the county (and Superintendent O'Mara, to the extent that he is named as a defendant in his official capacity) is entitled to summary judgment for an additional reason: plaintiff has not demonstrated (nor has she even alleged) that her claimed constitutional deprivations were the product of any municipal custom or policy. See generally Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978). See also McCabe v. Life-Line Ambulance Service, Inc., 77 F.3d 540 (1st Cir. 1996).

II. Racial Discrimination.

In support of her racial discrimination claim, plaintiff makes two assertions. First, she says that she was provided with clothing that was in worse condition than that provided to white inmates and she was denied a sweatshirt when she asked for one. Next, she claims that she was transferred from a cell on the first floor to a cell on the second floor as part of Correctional Officer Townsend's efforts to discriminate against her (the court will assume that if such a transfer were motivated by an unlawful

13

racial animus, it might constitute an impermissible "retaliatory transfer"). However, the record wholly undermines both claims.

The clothing provided to plaintiff upon her arrival was substantially similar to (and, in some cases, better than) that provided to other inmates (both black and white). See Hillsborough County Property Issue Form (dated May 4, 1999 and signed by plaintiff), attached to Exhibit B of defendants' motion for summary judgment, Affidavit of David M. Dionne. As to her claim that she was, for racially-based reasons, denied a sweatshirt when she complained that she was cold, the record reveals: (1) the pod on which she lived was, on each day during the period of time relevant to her claims, maintained at a temperature between 72 and 76 degrees (see id.); (2) during the summer months, inmates were not issued sweatshirts without a medical authorization slip; (3) plaintiff did not request (nor did she receive) a medical authorization slip entitling her to a sweatshirt.

14

Finally, plaintiff has failed to point to any genuine issues of material fact that might preclude the entry of judgment as a matter of law in favor of defendants as to her claim that she was transferred from one cell to another based upon some racially discriminatory animus. As plaintiff alleges, she was in fact relocated from a cell on the first floor of the women's pod to a cell on the second floor (how plaintiff suffered any harm from that transfer is, however, unstated). Nevertheless, plaintiff was permitted to retain the lower bunk in her new cell (plaintiff had been allowed to use the lower bunk in her various cells due to her complaints about her sore shoulder and because of her weight). The record also reveals that plaintiff was transferred for a legitimate, penological reason: for medical reasons, another inmate needed to be housed on the first floor, on a lower bunk. See Exhibit C to defendants' motion for summary judgment, Affidavit of William Raymond, at para. 6 ("I am aware that the plaintiff claims that (former) Correctional Officer Townsend transferred her to a second tier cell under the guise of providing the cell to a pregnant inmate, but instead assigned it to a white female inmate. I have conducted research into this

15

issue and determined that the inmate who received the cell, Catherine Anaya, did in fact require specialized medical care and was assigned the lower level cell vacated by Ms. Nabatanzi."). Nothing to which plaintiff points undermines the assertion that she was transferred without reference to her race and for entirely permissible penological reasons.

## Conclusion

In response to defendants' motion for summary judgment, plaintiff has failed to point to sufficient evidence to support the conclusion that there are any genuinely disputed issues of material fact. And, on the record presently before it, the court concludes that defendants are entitled to judgment as a matter of law as to all of plaintiff's remaining federal claims. To the extent her complaint raises state law causes of action (a point that is not entirely clear, as discussed in the court's prior order), the court declines to exercise supplemental jurisdiction over any such claims, which are denied without prejudice.

16

Defendants' motion for summary judgment (document no. 127) is granted.  Plaintiff's motion for reconsideration (document no. 129) is denied.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 17, 2000

cc:  Elizabeth M. Nabatanzi
     Andrew B. Livernois, Esq.
     John A. Curran, Esq.

17