Nabatanzi v. Hillsborough, et al.    CV-99-415-M    04/19/01
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Elizabeth M. Nabatanzi,
      Plaintiff

      v.                                    Civil No. 99-415-M
                                            Opinion No. 2001 DNH 076

Hillsborough County Dept. of Corrections,
James O'Mara, Jr., Mark Cusson,
David Dionne, Tony Sawyer, Robin Townsend,
William Duffy, Alexandra Cristea,
Donna Lacerte, and Alan M. Stein, M.D.,
      Defendants


                         **O R D E R**


      Pro se plaintiff Elizabeth Nabatanzi was, until September of

1999, a detainee of the United States Immigration and

Naturalization Service ("INS").  During a portion of her

detention, she was held at the Hillsborough County House of

Corrections, also known as "Valley Street."  She brings this

action pursuant to 42 U.S.C. § 1983, seeking $9 Million in

damages for alleged violations of her First, Eighth, and

Fourteenth Amendment rights.  The Hillsborough County Department

of Corrections and its employees (collectively, the "Municipal

Defendants") move for summary judgment, saying Nabatanzi's claims

are barred by res judicata and collateral estoppel.  Defendant

Alan Stein, M.D., moves to strike the default judgment entered against him, saying it was improvidently granted since Nabatanzi failed to properly serve him and, in any event, claiming he has shown good cause sufficient to warrant striking the default.[1] Nabatanzi objects to both motions.

## Discussion

Plaintiff originally filed this action in the United States District Court for the District of Massachusetts. Following an initial review of the complaint, the court concluded that it lacked personal jurisdiction over the defendants. Because plaintiff was, at the time, being detained in New Hampshire and because her complaint related to alleged constitutional deprivations that she suffered while in New Hampshire, the matter was transferred to this court. Unfortunately, the parties did not request or suggest that the case be consolidated with plaintiff's ongoing litigation in this forum, in which she raised

---

[1] Plaintiff's amended complaint also identifies a second physician - Dr. Freeman - as a defendant in this proceeding. Plaintiff has not, however, demonstrated that she ever served Dr. Freeman with a summons or copy of the amended complaint. Consequently, the court lacks personal jurisdiction over him and he is not a party to this litigation.

identical claims, based upon the same events, against many of the same defendants.  See Nabatanzi v. N.H. Dept. of Corrections, Civil Docket No. 99-180-M ("Nabatanzi I").[2]

## Facts

The factual background to this case was described in detail in the court's prior orders in plaintiff's earlier case.  See Nabatanzi I, 2000 DNH 215 (D.N.H. October 17, 2000); Nabatanzi I, 2000 DNH 165 (D.N.H. August 25, 2000).  Accordingly, the court recounts only those facts material to the pending motions.

Following what appears to have been a state court conviction for larceny, plaintiff was incarcerated at the Massachusetts State Prison at Framingham.  When she was released from the custody of Massachusetts corrections officials, the United States Immigration and Naturalization Service ("INS") began deportation proceedings against her.  Plaintiff was taken into INS custody and transferred to the Hillsborough County House of Correction

---

[2]     Municipal Defendants Hillsborough County Department of Corrections, James O'Mara, Jr., David Dionne, and Robin Townsend were all treated as having been properly named and served as defendants in Nabatanzi I.

("Valley Street"). Approximately three months after her arrival at Valley Street, plaintiff was released on her own recognizance. None of the claims raised in this case appears to relate to plaintiff's original detention at Valley Street.

The record in Nabatanzi I suggests that in early 1999, plaintiff was ordered deported to her native country of Uganda. Pending appeal, bail was set at $1500. In March of 1999, when plaintiff was unable to post the required surety, the INS again took her into custody. Initially, she was held at the Goffstown Women's Prison, which is part of the New Hampshire State Prison System. Plaintiff remained at Goffstown for approximately two months. Although she raised various state and federal claims related to her detention at Goffstown in Nabatanzi I, plaintiff raises no such claims in this proceeding. On May 4, 1999, she was transferred back to Valley Street, where she remained until September of 1999, when she was released on bail.

In this case, as in her prior case, plaintiff asserts that, during her second stay at Valley Street, defendants were deliberately indifferent to her serious medical needs. She also

4

alleges that defendants subjected her to various acts of racial discrimination, thereby rendering her conditions of confinement unsanitary and inhumane. Finally, as in her prior case, she at least alludes to what might be considered state law claims for defamation, assault and battery, and negligence. Importantly, all of her federal claims are identical to those previously raised in Nabatanzi I and relate to precisely the same alleged incidents relied upon in that earlier case. Accordingly, the factual details underpinning those claims need not be recounted. Generally speaking, plaintiff complains of racially discriminatory transfers between cells, inadequate food and clothing, and cells that were too cold, all of which made the conditions of her confinement cruel and unusual, within the meaning of the Eighth Amendment. She also alleges that she was denied adequate medical treatment for various ailments and injuries she claims to have incurred while in custody.

As to defendant Stein, who was not named as a defendant in Nabatanzi I, plaintiff alleges that he is a medical doctor, "in charge of medical issues brought to the Medical Department," amended complaint at 2, who failed "to follow-up treatments and

5

examination of federal prisoners, [failed] to provide consistent care, [failed] to giv[e] necessary medications to plaintiffs, [and failed] to carry out several [medical] tests." Amended complaint, at 6-7. Additionally, plaintiff says that, "the jail never followed up with her medication regimen she was on at Goffstown prison," and she "suffered diarrhea for over 45 days without medication and blood screening." Amended complaint, at 12-13. It is, however, unclear whether plaintiff attributes the latter incidents of alleged mistreatment to Dr. Stein.[3]

Although Stein was not specifically named as a defendant in Nabatanzi I, plaintiff raised precisely the same claims in that case. And, after carefully considering each of those claims in light of the record evidence, the court concluded that the medical records revealed that when plaintiff complained of discomfort or requested medical attention, she was seen by medical staff at Valley Street, who took appropriate remedial action. Nabatanzi I, 2000 DNH 215, at 11. The court held that:

---

[3] Dr. Stein is not an employee of Hillsborough County. Instead, it appears that he was employed by private medical groups that provided services, on a contract basis, to inmates and detainees in the custody of the County.

> Even charitably construing what appear to be plaintiff's overstated claims, at the very most it might be argued that defendants were negligent in terms of the medical care that they provided to [her]. Nothing, however, supports plaintiff's assertion that they were deliberately indifferent to her serious medical needs. Consequently, the individual defendants (in their individual capacities) are entitled to judgment as a matter of law as to that claim.
>
> And, because plaintiff has failed to point to evidence in the record sufficient to support her claim that she suffered any constitutional injury, Hillsborough County is necessarily also entitled to judgment as a matter of law.

Id. After granting the Municipal Defendants' motion for summary judgment with respect to all of plaintiff's federal claims, the court declined to exercise supplemental jurisdiction over plaintiff's state law claims, "[t]o the extent her complaint raises state law causes of action (a point that is not entirely clear, as discussed in the court's prior order)." Id. at 15.

## Discussion

I. Stein's Motion to Strike Default.

On February 29, 2000, the court (Muirhead, M.J.) ordered plaintiff "to prepare the necessary summonses for each defendant in this action and return those summonses to this court within thirty (30) days of the date of this order." Document no. 6, at

7

4. Following the court's issuance of summonses for each defendant, see Local Rule 4.3(d)(1)(A), plaintiff was afforded 120 days within which to serve them. Id. See also Fed. R. Civ. P. 4(m). Plaintiff failed to serve any defendant within the time prescribed and the court dismissed her complaint for want of prosecution.

Plaintiff then moved to vacate the order of dismissal and sought additional time within which to complete service. The court granted her motion, instructing her to serve defendants by the end of April, 2000. See Document no. 11. Again, plaintiff failed to comply. And, again, based largely on her pro se status, the court afforded her additional time within which to complete service - this time, until August 17, 2000. See Document no. 13 ("In accordance with Federal Rule of Civil Procedure 4(m), the case will be dismissed without prejudice on August 17, 2000, if said return or a motion to extend time to effect service is not received by that date."). It was not until December 4, 2000, however, that plaintiff finally served defendant Stein with a summons and copy of the complaint. For reasons explained in his motion, Stein neglected to file an

8

answer in a timely fashion and the Clerk, apparently unaware of the fact that Stein was not properly served, entered default judgment against him.

Because plaintiff failed to properly serve Stein in a timely fashion (notwithstanding several extensions of the time period within which to complete such service) and because she was never granted a further extension of the service deadline, Stein is not a proper party to this proceeding and the court lacks personal jurisdiction over him.  See, e.g., Dodco, Inc. v. American Bonding Co., 7 F.3d 1387, 1388 (8th Cir. 1993) ("If a defendant is improperly served, the court lacks jurisdiction over the defendant.").  Consequently, the default judgment against him was improvidently entered.  It is, therefore, vacated and all claims against him are dismissed, without prejudice.  See Fed. R. Civ. P. 4(m) ("If service of the summons and complaint is not made upon a defendant [within the time prescribed by the court], the court . . . shall dismiss the action without prejudice as to that defendant . . . .").

9

II.  Municipal Defendants' Motion for Summary Judgment.

The Municipal Defendants assert that, in light of the court's prior rulings in their favor in Nabatanzi I, principles of res judicata and collateral estoppel entitle them to judgment as a matter of law as to all of the claims plaintiff raises in this proceeding.  Although plaintiff has objected, she has not specifically addressed the Municipal Defendants' reliance upon res judicata or collateral estoppel.  See generally Plaintiff's objection (document no. 43) at 1.  Plaintiff does, however, concede that this case raises precisely the same issues that were resolved against her in Nabatanzi I.  See Id. ("Plaintiff filed the above-captioned matter alleging deliberate indifference to her medical needs, racial discrimination and unconstitutional conditions of her confinement during her detention at the above jail.").  See also Nabatanzi I, 2000 DNH 215, at 2-3, 12-15 (D.N.H. October 17, 2000) (characterizing plaintiff's complaint as raising two federal claims - deliberate indifference to her serious medical needs and racial discrimination - and addressing her claims relating to unsanitary and inhumane conditions of confinement in the context of her discrimination claim).

10

In cases such as this, in which both the prior suit and current (possibly precluded) suit were filed in federal court, federal law governs the preclusive effect given to the earlier litigation. See Mass. School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 37 (1st Cir. 1998); Faigin v. Kelly, 184 F.3d 67, 78 (1st Cir. 1999). The doctrine of res judicata encompasses two related, but nonetheless distinct, legal principles: claim preclusion and collateral estoppel (also known as issue preclusion).

> The essential elements of claim preclusion are: (1) a final judgment on the merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits. Once these elements are established, claim preclusion also bars the relitigation of any issue that was, or might have been, raised in respect to the subject matter of the prior litigation.
>
> The principle of collateral estoppel, or issue preclusion, bars relitigation of any factual or legal issue that was actually decided in previous litigation between the parties, whether on the same or a different claim. When there is an identity of the parties in subsequent actions, a party must establish four essential elements for a successful application of issue preclusion to the later action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment. An issue may be "actually"

11

> decided even if it is not _explicitly_ decided, for it
> may have constituted, logically or practically, a
> necessary component of the decision reached in the
> prior litigation.

Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 30-31 (1st

Cir. 1994) (citations and internal quotation marks omitted)

(emphasis in original).

 

A.  The Defendants from Nabatanzi I.

With respect to those Municipal Defendants who were also

named as defendants in Nabatanzi I (Hillsborough County

Department of Corrections, O'Mara, Dionne, and Townsend), all of

the elements of claim preclusion are met: (1) a final judgment on

the merits in an earlier action; (2) an identity of parties in

the two suits; and (3) an identity of the causes of action in

both suits.  Consequently, plaintiff is precluded from

relitigating the claims that were resolved against her in

Nabatanzi I and those Municipal Defendants are entitled to

judgment as a matter of law.

12

B.    The Defendants not Named in Nabatanzi I.

The remaining Municipal Defendants (Cusson, Sawyer, Duffy, Lacerte, and Cristea) were not parties to Nabatanzi I.  So, the question presented by their motion for summary judgment is whether they are entitled to the protections afforded by what is known as "defensive collateral estoppel."  The Supreme Court has described defensive collateral estoppel as occurring "when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant."  Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.4 (1979).

In Nabatanzi I, plaintiff raised precisely the same constitutional claims, based upon precisely the same facts alleged in this proceeding.  In that case, after affording plaintiff a full and fair opportunity to present evidence in support of her claims, the court concluded that plaintiff was not: (1) deprived of constitutionally adequate medical care; (2) subjected to unlawful racial discrimination; or (3) subjected to constitutionally deficient conditions of confinement at any point during her detention at Valley Street.  As a result, say the

13

remaining defendants, plaintiff should not be afforded a second opportunity to litigate those claims.

In <u>Blonder-Tongue Labs., Inc. v. Univ. of Illinois Foundation</u>, 402 U.S. 313 (1971), the Court addressed a similar situation (in the context of a patent invalidity suit) and observed:

> In any lawsuit where a defendant . . . is forced to present a complete defense on the merits to a claim which the plaintiff has fully litigated and lost in a prior action, there is an arguable misallocation of resources.  To the extent the defendant in the second suit may not win by asserting, without contradiction, that the plaintiff had fully and fairly, but unsuccessfully litigated the same claim in the prior suit, the defendant's time and money are diverted from alternative uses - productive or otherwise - to relitigation of a decided issue. . . . Permitting repeated litigation of the same issue as long as the supply of unrelated defendants holds out reflects either the aura of the gaming table or a lack of discipline and of disinterestedness on the part of the lower courts, hardly a worthy or wise basis for fashioning rules of procedure.

<u>Id.</u> at 329 (citation and internal quotation marks omitted).  <u>See also</u> <u>F.W. Standefer v. United States</u>, 447 U.S. 10, 24 (1980) ("<u>Blonder-Tongue</u> and <u>Parklane Hosiery</u> were disputes over private rights between private litigants.  In such cases, no significant

14

harm flows from enforcing a rule that affords a litigant only one full and fair opportunity to litigate an issue, and there is no sound reason for burdening the courts with repetitive litigation."); Lynch v. Merrell-National Labs. Div. of Richardson-Merrell, Inc., 830 F.2d 1190, 1192 (1st Cir. 1987) ("Federally, the traditional requirement of mutuality has been eliminated to permit a defendant to invoke estoppel against a plaintiff who lost on the same issue to an earlier defendant.") (citation omitted).

The reasoning of Blonder-Tongue, as augmented in Parklane Hosiery, applies directly to this case. In Nabatanzi I, plaintiff was afforded a full and fair opportunity to present evidence in support of her assertion that various constitutionally protected rights were violated during her detention at Valley Street. Each of those claims was considered on the merits and resolved against her. Accordingly, the remaining Municipal Defendants are entitled to invoke defensive collateral estoppel and plaintiff is barred from relitigating those claims.

15

Because plaintiff's federal claims in this proceeding are identical to those raised in <u>Nabatanzi I</u> (that is, plaintiff raises no new facts or causes of action in this proceeding), and because those claims were previously resolved against her on the merits, the remaining Municipal Defendants are entitled to judgment as a matter of law as to all federal claims asserted against them.

## Conclusion

For the foregoing reasons, the Municipal Defendants' motion for summary judgment (document no. 41) is granted.  As to all of plaintiff's federal claims, those defendants are entitled to judgment as a matter of law.  As to plaintiff's state law claims, the court again declines to exercise supplemental jurisdiction and they are dismissed without prejudice.  The Municipal Defendants' motion for leave to reply to plaintiff's objection (document no. 45) is denied as moot.

Dr. Stein's motion to strike default judgment (document no. 47) is granted and all claims against him are dismissed, without

16

prejudice.  Plaintiff's motion for default judgment against Dr. Stein (document no. 49) is denied.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 19, 2001

cc:  Elizabeth M. Nabatanzi
     John A. Curran, Esq.

17